**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| VANTAGE POINT TECHNOLOGY, INC., *Plaintiff*, v. AMAZON.COM, INC., *Defendant*. | CASE NO. 2:13-cv-909-JRG **LEAD CASE** |
| VANTAGE POINT TECHNOLOGY, INC., *Plaintiff*, v. KYOCERA COMMUNICATIONS INC., *Defendant*. | CASE NO. 2:13-cv-917-JRG MEMBER CASE |
| VANTAGE POINT TECHNOLOGY, INC., *Plaintiff*, v. PANASONIC CORPORATION OF NORTH AMERICA, *Defendant*. | CASE NO. 2:13-cv-992-JRG MEMBER CASE |
| VANTAGE POINT TECHNOLOGY, INC., *Plaintiff*, v. NEC CORPORATION OF AMERICA, *Defendant*. | CASE NO. 2:13-cv-923-JRG MEMBER CASE |

| | |
|---|---|
| VANTAGE POINT TECHNOLOGY, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> HUAWEI DEVICE USA INC. and FUTUREWEI TECHNOLOGIES, INC., <br><br> *Defendants*. | CASE NO. 2:13-cv-916-JRG <br><br> MEMBER CASE |
| VANTAGE POINT TECHNOLOGY, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> LG ELECTRONICS USA, INC., <br><br> *Defendant*. | CASE NO. 2:13-cv-920-JRG <br><br> MEMBER CASE |
| VANTAGE POINT TECHNOLOGY, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHARP ELECTRONICS CORP., <br><br> *Defendant*. | CASE NO. 2:13-cv-993-JRG <br><br> MEMBER CASE |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants Kyocera Communications, Inc.'s ("Kyocera") Motion to Stay (Dkt. No. 181), which is joined by Defendants Panasonic Corporation of North America ("Panasonic") (Dkt. No. 183), Amazon.com, Inc. ("Amazon") (Dkt. No. 186), Huawei Device USA Inc. and Futurewei Technologies, Inc. ("Huawei entities") (Dkt. No. 188), Sharp Electronics Corporation ("Sharp") (Dkt. No. 189), and LG Electronics USA, Inc. (Dkt. No 190), in addition to NEC Corporation of America's ("NEC") Motion to Stay (Dkt. No. 185) (collectively, "Moving Defendants"). Plaintiff Vantage Point Technology, Inc. ("Vantage Point"

2

or "Plaintiff") responded to all motions in a single response (Dkt. No. 194). The Court sets forth its opinion concerning all requests for relief in this Order. For the reasons set forth below, the Court **ORDERS** that all claims against Defendants NEC Corporation of America (Case No. 2:13-cv-923), Kyocera Communications, Inc. (Case No. 2:13-cv-917), and Huawei Device USA Inc. and Futurewei Technologies Inc. (Case No. 2:13-cv-916) be transferred to the Northern District of California, **ORDERS** that some but not all of the claims (set forth in more detail below) against LG and Panasonic be transferred to the Northern District of California, and otherwise **DENIES** all Moving Defendants' requests for a stay (Dkt. Nos. 181 & 185).

## BACKGROUND

The Plaintiff Vantage Point filed a number of lawsuits in the Eastern District of Texas against two types of defendants: (1) companies that design and manufacture chipsets ("chipset makers"), and; (2) companies that utilize chipsets in their products ("chipset consumers"). Vantage Point has alleged infringement of U.S. Patent No. 5,463,750 ("the '750 patent") and U.S. Patent No. 6,374,329 ("the '329 patent").

The Court finds it relevant that Vantage Point filed suit against chipset makers Qualcomm Inc. ("Qualcomm") (Case No. 2:13-cv-926), NVIDIA Corporation ("NVIDIA") (Case No. 2:13-cv-924), Marvell Semiconductor, Inc. ("Marvell") (Case No. 2:13-cv-992), Texas Instruments, Inc. ("Texas Instruments") (Case No. 2:13-cv-929), Freescale Semiconductor, Inc. ("Freescale") (Case No. 2:13-cv-913), and MediaTek USA, Inc. ("MediaTek") (Case No. 2:13-cv-991) (collectively, the "chipset makers"). Vantage Point has alleged that these chipset makers directly infringe at least one claim of the '750 patent.

Vantage Point also filed suit against various chipset consumers, some of which design and/or manufacture their own chipsets but all of which purchase chipsets from at least one of the

above chipset makers. The chipset consumers relevant to this Order include the Moving Defendants and Apple, Inc. ("Apple") (Case No. 2:13-cv-989). Vantage Point has alleged that these chipset consumers also directly infringe at least one claim of the '750 patent.

In September of 2014, the Court transferred Apple to the Northern District of California. Dkt. No. 24 in case 2:13-cv-989. Vantage Point then acquiesced in allowing certain other defendants to be transferred to the Northern District of California by way of an unopposed motion. That transfer included chipset makers Qualcomm, NVIDIA, and Marvell. However, chipset makers Texas Instruments, Freescale, and MediaTek are still active defendants before this Court, along with all of the Moving Defendants.

All Moving Defendants have requested a stay based on the consumer-suit exception to the traditional "first-to-file" rule. Each Moving Defendant alleges that it is merely a consumer of a chipset maker and that, as a result, each Moving Defendant's case should be stayed pending the resolution of its respective chipset maker's case. The following table summarizes the Moving Defendants' alleged chipset makers and the location of those chipset makers' currently pending cases:

| EDTX Defendant/ Chipset Consumer | Chipset Maker(s) | Location of Chipset Maker's Currently Pending Case |
|---|---|---|
| Amazon | (1) Texas Instruments | (1) Eastern District of Texas |
|  | (2) Freescale | (2) Eastern District of Texas |
| Sharp | MediaTek | Eastern District of Texas |
| NEC | Qualcomm | Northern District of California |
| Kyocera | Qualcomm | Northern District of California |
| Huawei entities | Qualcomm | Northern District of California |

| | | |
|---|---|---|
| LG | (1) Qualcomm | (1) Northern District of California |
| | (2) NVIDIA | (2) Northern District of California |
| | (3) Texas Instruments | (3) Eastern District of Texas |
| Panasonic | (1) Marvell | (1) Northern District of California |
| | (2) Texas Instruments | (2) Eastern District of Texas |

As the above table shows, Amazon and Sharp both use chipset makers that have current cases against Vantage Point pending in the Eastern District of Texas. NEC, Kyocera, and the Huawei entities, on the other hand, all use one chipset maker (Qualcomm) that has a current case against Vantage Point pending in the Northern District of California. Finally, LG and Panasonic each use two or more chipset makers, some of which have pending cases in the Northern District of California and some of which have pending cases in the Eastern District of Texas.

The Court held a hearing concerning the pending motions to stay on December 18, 2014. Freescale, MediaTek, NEC, the Huawei entities, Kyocera, Samsung, Panasonic, Amazon, and LG, along with the Plaintiff, were present and represented at the hearing.

## APPLICABLE LAW

Each of the Moving Defendants requests a stay under the consumer-suit exception to the first-to-file rule. "The customer suit exception is an exception to the general rule that favors the forum of the first-filed action." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 185 (1952)). The "primary question" under this exception "is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990). Although in certain circumstances the consumer-suit exception may still apply if "additional issues" are left unresolved by the second-filed action, the key is whether "resolution of the major issues before [the] court, including

5

patent infringement [and] patent validity . . . will resolve these issues as to [the] customers." *Id.* at 1464.

The Federal Circuit suggests that the following three factors are probative of whether or not it would be more efficient to proceed with the second-filed action before the first-filed action: (1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the consumers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product. *Tegic Commc'ns Corp.*, 458 F.3d at 1333. However, the Court does not apply the factors in a "mechanical" or "precise" manner and instead adopts a "flexible approach" in order to assess whether judicial resources will be saved. *In re Google*, No. 14-147, at 7 (Fed. Cir. 2014) (nonprecedential opinion).

## DISCUSSION

The Court divides the Moving Defendants into three groups based on their factual similarities. The Amazon and Sharp defendants are addressed first. NEC, Kyocera, and the Huawei entities are addressed second. The LG and Panasonic defendants are addressed third.

### I.   Amazon and Sharp Defendants

The Court begins by analyzing the claims of Amazon and Sharp, both of which are alleged consumers with manufacturers that only have pending cases in the Eastern District of Texas. The factual scenario surrounding Amazon's and Sharp's requests for a stay are substantially similar to each other for this reason.

Amazon and Sharp request a stay based on the consumer-suit exception even though the facts of their respective cases do not fall under the classic consumer-suit exception for at least

two reasons. First, there is no "second-filed" case in a different forum. Instead, both the consumer and manufacturer have pending cases in the same forum, and those cases have been consolidated for all pretrial matters. Consolidating cases for pretrial matters furthers convenience and economy in administration. *See* Fed. R. Civ. P. 42(a) (outlining procedures, including consolidation, to avoid unnecessary cost or delay); *see also Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496 (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration.") Therefore the act of consolidation advances the very same goals that the consumer-suit exception seeks to advance: judicial efficiency. *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

At the hearing held on December 18, 2014, the Court expressed a willingness to allow the chipset makers' cases to go to trial before the chipset consumers' cases. The Court believes that consolidation of these cases plus a directive on the timing of trial dates applies a more "flexible approach" that results in "substantial savings of litigation resources." *In re Google*, No. 14-147, at 7 (Fed. Cir. 2014). To the extent that issues are resolved by the chipset makers' cases, the parties' resources will not be needlessly duplicated during the trial of the chipset consumers' cases, and judicial efficiency is advanced.

Second, Amazon and Sharp have not agreed to be bound by the findings of the first trial. *See* Dkt. No. 186 at 3. Instead, Amazon and Sharp have only agreed to be bound by findings made "regarding the technical operation of the" chipsets. *Id.* This "agreement" does not, on its face, suggest that a resolution of the case against the chipset makers constitutes a resolution of all major issues against Amazon and Sharp, leaving only "additional issues" to be litigated in the chipset consumer's trial. For example, the Federal Circuit has explicitly stated that "major issues" "include[] patent infringement [and] patent validity." *Katz v. Lear Siegler, Inc.*, 909 F.2d

7

1459, 1464 (Fed. Cir. 1990). Amazon and Sharp, however, have not disclaimed their respective rights to re-litigate issues of invalidity. In fact, when pressed at the December 18th hearing, no party agreed to be bound by a finding of patent validity. As a result, the "primary question" of "whether the issues and parties are such that the disposition of one case would be dispositive of the other" has not been answered in the affirmative. *Id.* at 1463. As a result, the consumer-suit exception to the first-to-file rule is not warranted for Amazon and Sharp.

With the Court's announced directive that the chipset makers' cases will proceed to trial first, the Court **DENIES** Amazon's and Sharp's requests for a Motion to Stay (Dkt. No. 186 & 189).

## II.    NEC, Kyocera, and Huawei Entities

Next, the Court examines the merits of NEC, Kyocera, and the Huawei entities' motions. These Defendants are similarly situated in that each uses Qualcomm as a chipset maker. Vantage Point allowed Qualcomm's case to be transferred to the Northern District of California by way of an unopposed motion. According to NEC, Kyocera, and the Huawei entities, this transfer means that "Kyocera [and the others] must now respond to allegations concerning a device it does not design and does not fully understand, while the party that designed and understands that device responds to the exact same allegations in a far-away court." Dkt. No. 181 at 1.

Despite this contention, the Court also notes that the facts of these cases do not fall under the traditional application of the consumer-suit exception. *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (rejecting application of the consumer-suit exception "[b]ecause [the manufacturer] did not file a separate declaratory judgment action against [the Plaintiff]" in a different forum). Here, the manufacturer (chipset

8

maker) did not file a separate declaratory judgment action. Instead, the chipset maker's case was merely transferred. However, the Court believes that the general theory supporting the consumer-suit exception applies in this limited circumstance and to the facts of this particular case. Accordingly, the Court will analyze whether the principles and factors that guide the Court under the consumer-suit exception apply to the facts of this case. As shown below, the Court finds they do not.

First, the Court determines whether NEC, Kyocera, and the Huawei entities are "mere resellers" of an infringing product. These similarly situated defendants argue that they are "reseller[s] because [their] phones include Qualcomm devices." Dkt. No. 181 at 5. Reasoning that their liability is "based entirely on Vantage Point's allegations against Qualcomm," these defendants believe that they meet this first factor. *Id.* Vantage Point, on the other hand, argues that NEC, Kyocera, and the Huawei entities are not mere resellers. Dkt. No. 194 at 3. Vantage Point argues that although these defendants all incorporate chipsets made by Qualcomm, it is NEC's, Kyocera's, and the Huawei entities' use of its end products (e.g., phones and tablets) that directly infringe the '750 patent—not merely the chipset. *Id.*

The Court is persuaded that NEC, Kyocera, and the Huawei entities are not simply mere resellers of the chipsets. As Vantage Point notes, it is these defendants' alleged actions beyond reselling—for example, the action of testing the chipsets—that allegedly infringes the method claims of the '750 patent. At the December 18th hearing, Kyocera agreed with the Court's assessment. When asked if a finding of infringement against Qualcomm would also constitute a finding of infringement against Kyocera, Kyocera said it would not. Kyocera maintained that Vantage Point would still need to prove additional elements, including (for example) whether Kyocera tested the chipsets, to establish liability for infringement against Kyocera. This was true

9

even if liability against Qualcomm was already established. In other words, Kyocera admitted that—despite contrary statements in its motion—Kyocera's liability is *not* "based entirely on Vantage Point's allegations against Qualcomm." Dkt. No. 181 at 5. Accordingly, NEC, Kyocera, and the Huawei entities are not mere resellers in the ordinary sense. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (holding that the resolution of patent infringement in both cases is a major issue that should be required for the consumer-suit exception to apply).

Second, the Court must determine whether NEC, Kyocera, and the Huawei entities agreed to be bound by the outcome of the Qualcomm litigation. As with the Amazon and Sharp defendants, the Court is wholly unpersuaded that NEC, Kyocera, and the Huawei entities agreed to be bound by that outcome. The "agreement" put forth in Kyocera's motion to stay is insufficient under the consumer-suit exception. Kyocera (as well as NEC and the Huawei entities) state that they agree to be bound "regarding the technical operation of the" Qualcomm chipsets. Dkt. No. 186 at 3. This statement is not an agreement to be bound by the outcome of the litigation. The "major issues" to be resolved by a patent infringement suit must include patent validity and infringement liability. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). As noted earlier, neither of these defendants have agreed to be bound by a finding of validity nor a finding of infringement. When a party reserves the right to re-litigate two of the most important issues in a patent litigation dispute, the "primary question" of "whether the issues and parties are such that the disposition of one case would be dispositive of the other" has not been answered affirmatively. *Id.* at 1463. This Court finds that the consumer-suit exception does not apply as to NEC, Kyocera, and the Huawei entities.

Having determined that neither the first nor second probative factor supports the application of the consumer-suit exception, the Court notes that Vantage Point—not the current defendants—put these parties in their current predicament by agreeing to transfer Qualcomm, the chipset maker, out of the case. This is significant. By doing this, Vantage Point increased the amount of judicial resources that will be necessary to resolve all its disputes against these defendants.

In an effort to offset this likely increase in the use of judicial resources, the Court takes a "flexible approach" and **ORDERS** that the entire case against NEC Corporation of America (Case No. 2:13-cv-923), Kyocera Communications, Inc. (Case No. 2:13-cv-917), and Huawei Device USA Inc. and Futurewei Technologies Inc. (Case No. 2:13-cv-916) be transferred to the Northern District of California. All courts must increasingly strive for greater judicial efficiencies if the public's rights are to be adjudicated promptly. The maxim that "justice delayed is justice denied" is no less true today than when it was first uttered. As Chief Justice Warren E. Burger pointed out in an address to the American Bar Association in 1970:

> A sense of confidence in the courts is essential to maintain the fabric of ordered liberty for a free people, and three things could destroy that confidence and do incalculable damage to society: that people come to believe that *inefficiency and delay will drain even a just judgment of its value*; that people who have long been exploited in the smaller transactions of daily life come to believe that courts cannot vindicate their legal rights from fraud and over-reaching; that people come to believe the law—in the larger sense—cannot fulfill its primary function to protect them and their families in their homes, at their work, and on the public streets.

Warren E. Burger, "What's Wrong with the Courts: The Chief Justice Speaks Out," *U.S. News & World Report* (Vol. 69, No. 8, Aug. 24, 1970) 68, 71 (address to American Bar Association meeting, Aug. 10, 1970) (emphasis added).

### III. LG and Panasonic Defendants

The Court now reaches the more vexing issue surrounding the LG and Panasonic defendants. Panasonic is accused of purchasing chipsets from two chipset makers: Texas Instruments and Marvell. Texas Instrument's case is still pending in the Eastern District of Texas, while Marvell's case was transferred to the Northern District of California. LG is accused of purchasing chipsets from three chipset makers: Qualcomm, whose case is in the Northern District of California; NVIDIA, whose case is also in the Northern District of California, and; Texas Instruments, whose case remains pending in the Eastern District of Texas.

The analysis of the probative factors discussed earlier does not change for either of these two defendants. LG and Panasonic are not "mere resellers" for the same reasons that NEC, Kyocera, and the Huawei entities were not "mere resellers," and their agreement to be bound by the technical operation is likewise insufficient. Dkt. No. 183 at 6. Nevertheless, the Court still believes that considerations of judicial efficiency should govern the Court's actions and that greater efficiency can be gained by severing and transferring portions of these cases.

Panasonic contends that Vantage Point's allegations hinge on the operation of two chipsets incorporated into two of its tablets. One tablet, the ToughPad JT-B1, incorporates a Texas Instrument chipset, while the other tablet, the ToughPad FZ-a1 uses a Marvell chipset. The Court believes that such claims can be reasonably severed along these lines. Accordingly, the Court again takes a flexible approach and **ORDERS** that Vantage Point's claims against Panasonic be severed into two distinct cases, one which alleges infringement of end products utilizing the Marvell chipset and one which alleges infringement of end products utilizing the Texas Instrument chipset. The Court further **ORDERS**, post this severance, that the case involving the products incorporating the Marvell chipset be transferred to the Northern District

of California.  The Clerk of this Court is directed to accomplish the severance and transfer as ordered above.  The severed disputes involving Panasonic's end products utilizing the disputed Texas Instruments chipsets shall be retained before this Court and any request for a stay as to such claims is **DENIED**.  The Court, consistent with its prior directives, advises the parties that Vantage Point's claims against Texas Instruments will be adjudicated before the claims against Panasonic are put to trial.

LG is in a similar situation.  Vantage Point alleges infringement of LG's end products that incorporate Qualcomm, NVIDIA, and Texas Instrument chipsets.  Accordingly, the Court **ORDERS** that Vantage Point's claims against LG be severed into two distinct cases, one which alleges infringement of end products utilizing chipsets produced by Qualcomm or NVIDIA and another which alleges infringement of end products utilizing Texas Instrument chipsets.  The Court further **ORDERS** that LG's case involving the Qualcomm and NVIDIA chipsets be transferred to the Northern District of California. The Clerk of this Court is directed to accomplish the severance and transfer as ordered above.  The severed disputes involving LG's end products utilizing the disputed Texas Instruments chipsets shall be retained before this Court and any request for a stay as to such claims is **DENIED**.  The Court, consistent with its prior directives, advises the parties that Vantage Point's claims against Texas Instruments will be adjudicated before the claims against LG are put to trial.

## CONCLUSION

The Court finds that these cases fall outside the consumer-suit exception to the first-to-file rule.  Accordingly, the relief sought in all parties' motions and joinder in motions to stay is uniformly **DENIED**, with the express directive that the chipset makers will proceed to trial first in the Eastern District of Texas.  The Court also finds that despite the inapplicability of the

consumer-suit exception, judicial efficiency can nevertheless be increased by transferring parties with common claims to the same court. For this reason, some of the parties claims are transferred as specified in more detail above.

**So ORDERED and SIGNED this 6th day of January, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE